# THE PEOPLE, use, etc.
## v.
# BEVERLY WILTSHIRE ET AL.

1. REPLEVIN—EXECUTION OF WRIT.—The prime object of an action of replevin is to put the plaintiff in possession of the property, and when a writ is sued out and proper bond given, it is the first duty of the officer to seize the property and then read the writ to the defendant, if he can be found, etc. It is not a compliance with his duty to merely read the writ to the defendant. Whether the defendant may feel disposed to deliver up the property or not,

The People v. Wiltshire.

is of no consequence to the officer; it is his imperative duty to seize the property if it can be found.

2.  INSOLVENCY OF DEFENDANT MAY BE SHOWN.—In an action against a sheriff upon his official bond, for a failure to serve a replevin writ, evidence of the insolvency of the defendant in replevin is admissible.

3.  VOIDABLE SALE—MORTGAGEE PURCHASING AT HIS OWN SALE.—The fact that the property in question was purchased by the plaintiff in replevin at his own sale as mortgagee cannot be inquired into in this proceeding upon the sheriff's bond.  At the best such sale was only voidable, and could only be avoided in equity by the mortgagor or *cestui que trust* upon proper application within a reasonable time.  The objection cannot be raised by third parties.

4.  MORTGAGEE ENTITLED TO POSSESSION.—But if the sale had been void, the mortgagee might have taken possession under the insecurity clause in the mortgage; and if such possession had been disturbed, he could regain it by action of replevin.

ERROR to the Circuit Court of Randolph county; the Hon. AMOS WATTS, Judge, presiding.   Opinion filed October 6, 1881.

Mr. JOHN MICHAN and Mr. ALBERT N. SPRAGUE, for plaintiff in error; as to the execution of a 'writ of replevin, cited Rev. Stat. 1874, 852; Wells on Replevin, 165; Abrams v. Jones, 4 Wis. 806.

Sales to a mortgagee are merely voidable at the suit of the mortgagor or *cestui que trust:* 4 Kent. Com. 515; N. Y. Cent. Ins. Co. v. Nat. Pro. 'Ins. Co. 20 Barb. 470; 2 Wait's Actions and Defenses, 210; 1 Story's Eq. § 321; Bispham's Eq. 136; 1 Perry on Trusts, § 195; Forbes v. McCullom, 1 Gilm. 614; McConnell v. Gibson, 12 Ill. 128; Follansbee v. Kilbreth, 17 Ill. 522; Lockwood v. Mills, 39 Ill. 602; Kruse v. Steffens, 47 Ill. 112; Hamilton v. Lubukee, 51 Ill. 415.

A return by an officer is conclusive against him, but is not final in his own favor: Freeman on Executions, 604; Rorer on Judicial Sales, 293.

A party cannot make testimony for himself: Morgan v. Peet, 32 Ill. 281; McCausland v. Wonderly, 56 Ill. 410; Aiken v. Hodge, 61 Ill. 436.

Evidence of the insolvency of the defendant in replevin was admissible, as showing the actual injury suffered by neglect of the sheriff:  Sedgwick on Damages, 633.

Mr. J. PERRY JOHNSON, for defendants in error; that the law requires only reasonable diligence of a sheriff in serving a writ, and this is a question for the jury, cited Freeman on Executions, §§ 107, 252; Trigg v. McDonald, 2 Humph. 386; Barnes v. Thompson, 2 Swan, 313; Hindman v. Borden, 10 Wend. 368; Wells on Replevin, § 298.

An officer is not protected by his writ in taking property from the possession of one not named in the writ: State v. Jinkins, 10 Ohio St. 73; Ramsdell v. Buswell, 54 Me. 546; Willard v. Kimball, 10 Allen, 201; Simpson v. Reynolds, 14 Barb. 506: Butler v. Montgomery, 50 N. Y. 353; Ottis v. Williams, 70 N. Y.—; 2 Hilliard on Torts, 344; Lyon v. Geere, 15 Ala. 360; Perkins v. Thornburg, 10 Cal. 189.

Want of title in the plaintiff may be set up as an excuse for not serving the writ: Stephens v. Frazier, 2 B. Mon. 250; Crosby v. Baker, 6 Allen, 295; Com'th v. Kennard, 8 Pick. 133; Brush v. Fowler, 36 Ill. 53; Jansen v. Acker, 23 Wend. 480; Perkins v. Thornburg, 10 Cal. 189.

If the officer finds the property in possession of one named in the writ, he should return the writ: Morris on Replevin, 170; Bird v. Colboth, 3 Wall. 334; Wells on Replevin, § 298.

The sheriff could not serve the writ outside his own county: Isett v. Stuart, 80 Ill. 404.

A new trial will not be granted merely on a preponderance of testimony against the verdict: Blair v. Field, 5 Kan. 58; Goldsmith v. Boersch, 28 Ia. 351; McKay v. Underwood, 47 Mo. 185; Smith v. Kruger, 33 Ind. 86; Bradford v. Rudolph, 45 Mo. 426.

A verdict will not be set aside when there is some evidence to support it: Simmons v. Johnson, 47 Ill. 350; Sheerman v. C. & M. R. R. Co. 48 Ill. 523; Am. Ex. Co. v. Bruce, 50 Ill. 201.

Or when the evidence is conflicting: Young v. Rock, 48 Ill. 42; Hope Ins. Co. v. Lonergan, 48 Ill. 49; Union Hide and Leather Co. v. Shoenman, 48 Ill. 74; Farr v. Scott, 50 Ind. 490; Moss v. Vroman, 5 Wis. 147; Turner v. Turner, 17 Ohio St. 449; Staples v. Wellington, 58 Mo. 453.

WALL, J.   This was an action of debt on the official bond of Wiltshire, as sheriff of Randolph county.   It is alleged in the declaration that Crawford, for whose use the suit was brought, had sued out of the circuit court a writ of replevin to recover the possession of fourteen stacks of wheat, then held by one Smith; and that, though the proper bond was given, and the sheriff having accepted the same, undertook to execute the writ of replevin, yet that he neglected to do so, whereby the wheat was not replevied according to the command of the writ, and the plaintiff suffered loss accordingly.   A trial was had, resulting in a verdict and judgment for defendant.   The evidence shows that the wheat had originally belonged to one Watson, who had given a chattel mortgage upon it to Crawford, the plaintiff, and the latter, under a provision contained in his mortgage, had taken possession, and had caused the property to be advertised and sold, himself becoming the purchaser, one Blair having conducted the sale, which occurred on the 13th of September, 1875.   Smith, who was a constable, holding an execution against Watson, levied upon the wheat and advertised it for sale on the 16th of October, 1875, at ten o'clock A. M.   On the 9th of October, Crawford sued out this writ of replevin, and placed it in the hands of the sheriff, and also gave him a sufficient and satisfactory bond; and the sheriff, on the 11th or 12th, sent the writ to Gore, as his deputy, to execute.   Gore lived at Red Bud, where Smith also lived.   The wheat was in a field, four and one-half miles from Red Bud. Gore knew where it was, and knew that the sale was to be at ten o'clock on the 16th.   Crawford went to see Gore, and was informed that the latter had not yet seen Smith, but that he would certainly attend to the matter.

It seems that Smith was then at Waterloo, in Monroe county, or was supposed to be, and that it was understood that he was keeping out of the way in order to avoid being served with this writ of replevin.   Gore, as well as the sheriff, so understood it, and, as he testified, took considerable care to watch the trains coming from Waterloo; and though he knew the sale was set for ten o'clock, it seems, from his own evidence, that he remained in Red Bud until the train arrived on the

16th, between 11 and 12 o'clock; and when Smith did not appear, he mounted a horse which he had ready and "ran him nearly down" to get to the stacks before the sale, but did not arrive there till a little before one o'clock, though the distance was only four and a half miles, and then found that the sale had taken place. He then read the writ to Smith and demanded the wheat, but did not get it, and returned the writ served by reading to Smith, but that the property was not found in the possession of Smith, but had previously been sold by the latter on execution, and therefore he could not take and deliver the same as he was in said writ commanded. Plaintiff proposed to prove that Smith was insolvent, and that a judgment against him would have been worthless; but the court refused to admit the evidence.

By the statute, Ch. 119, it is provided that upon the issuance of the writ of replevin the plaintiff shall execute and deliver to the officer receiving the writ, a bond, etc., conditioned that he will duly prosecute the suit and make return of the property, if return shall be awarded, and save and keep harmless the officer in replevying the property; and "upon such bond being given, the sheriff, constable or other proper officer, shall forthwith execute such writ by seizing and delivering the property therein mentioned to the plaintiff or his agent, and by reading such writ to the defendant if he can be found:" Sec. 14; and by Sec. 15 it is provided that it shall be the duty of the officer to read the writ to the defendant, whether the property is found or not, unless, when none of the property is found, the plaintiff or his agent otherwise directs; and by Sec. 16, when the defendant cannot be served by reason of non-residence or absence from the State, or concealment, etc., notice may be given him as in cases of attachment; and by Sec. 17 the plaintiff may declare in trover for the property or any part of it that may not be found.

The prime object in this form of action is to put the plaintiff in possession of the property; and to secure the officer against loss by reason of his failure to establish his right to the property, he is required to execute a bond, which is a protection to the officer, and to which the defendant may resort in case of

necessity.   When this bond is given, the first duty of the officer is to seize and deliver the property to the plaintiff, and then to read the writ to the defendant, if he can be found. This is the plain language of the statute, and there is no room for construction.   It is not a compliance with his duty to merely read a writ to the defendant.   "Whether the defendant who has possession of the property may feel disposed to give it up or not, is a matter of no consequence.   The officer is authorized by the writ, and it is his imperative duty to seize the property if it can be found, and deliver it, as commanded by the writ."   Yott v. People, 91 Ill. 13.   The defendant is not bound to take any affirmative action.   The writ commands the *sheriff* to *take* the property.   It does not command the defendant to deliver the property to the sheriff.   The sheriff must perform the mandate of the writ, and deliver the property to the plaintiff, regardless of the wishes of the defendant, or whether he may be found or not.   Horr v. People, etc., 95 Ill. 169; Wells on Replevin, page 165–6.   In this case the officer neglected this primary duty devolving upon him, and seems to have supposed that all he had to do was to get service upon the defendant ; and while this was a part of his duty, it was only a part.

When the writ came to his hands, he should have gone promptly and seized the property, and delivered it to the plaintiff.   This done, he should have read the writ to defendant, if he could be found.   This remedy would be of but small value in many instances, if the conduct of the officer in this case can be justified, for all the defendant would have to do would be to evade service, and dispose of the property.   But if the officer was correct in supposing that he had only to read the writ to defendant, or that he must do that in the first instance, still we are bound to say that he was extremely negligent and inefficient.   Though he knew the sale was to occur at ten o'clock, and though he knew that Smith was avoiding him, yet he remained in Red Bud until after eleven o'clock, taking the chances that Smith would come on that morning's train from Waterloo.   Even upon his own theory as to his duty, reasonable prudence would have dictated that he should be at the

place of sale by ten o'clock, for he had the best reason to believe or apprehend that Smith would be there promptly, and that he might get there without going through Red Bud, especially when by that route he could not possibly reach the place by the time fixed.

The court on motion of defendants, instructed the jury as follows, to-wit: "1st. The court instructs the jury that the sheriff of Randolph county cannot serve a writ of replevin out of his own county, and in this case could not have served the writ until the defendant in the writ of replevin, J. Matt Smith, returned from Monroe county, and if the jury from the evidence believe that the sheriff and his deputy used all reasonable diligence in serving the writ, you should find for the defendants." Given. "2nd. The court further instructs the jury that a sale by a constable under an execution passes the title in the property immediately on the conclusion of the sale, and if, from the evidence, you believe that the constable's sale was over when the sheriff's deputy arrived with the writ of replevin, he could not under the writ seize the property; and if from the evidence you believe the sheriff exercised reasonable diligence, you should find for the defendants." Given.

The first instruction assumes that the writ could only be executed by service upon the defendant, ignoring the duty of the officer to seize the property and deliver it to the plaintiff, and is at fault for that reason. It is also erroneous, because it assumes that the writ could not be served until the defendant returned from Monroe county. Perhaps it could not, so far as personal service on Smith was concerned, but that was a question of fact for the jury, and the implication was that nothing could be done until then, when as we have seen, the presence or absence of Smith had nothing to do with the matter of replevying the property.

As to the second instruction, it may be said, that waiving the correctness of the general proposition intended to be announced, it was calculated to impress the jury with the idea that if the officer had been reasonably diligent in his effort to serve the writ on the constable before the sale was made, the verdict should be for defendant, ignoring the fact that his duty re-

quired him to place the property in possession of the plaintiff in the first instance.  It may be that if the sale had been made in good faith, and had been completed by payment of the purchase-money and by delivery to the buyer, that the officer could not properly have then taken the property; the point is not raised and we do not discuss it; but the instruction seems to be imperfect in not informing the jury what would be necessary to constitute a valid sale, and in assuming that there was such a sale in this instance.

The · plaintiff requested the court to give the following instruction:  " 2d. The court further instructs the jury that the law is that a sheriff, upon receiving a writ of replevin, shall execute the same without delay, by seizing upon the property in the writ of replevin specified, and also by reading the same to the defendant in the writ of replevin named, if found in his county; and if the jury find from the evidence that the said defendant held said writ an unreasonable time, and did not seize the within described property; and if they further find from the evidence that it was in the power of said sheriff, his special deputy, to serve said writ by seizure, and that the said sheriff or his special deputy only served the same by reading to the defendant in said writ mentioned, then they should find for the plaintiff."  But the court refused said second instruction as asked by plaintiff, but modified and changed the same by inserting therein after the word defendant in the last clause the following:  " And that property was then in possession of defendant in the writ."

For reasons apparent from what we have already said, we think the court erred in this modification.  The refusal of the court to permit the plaintiff to show the insolvency of Smith, is assigned for error.  If the property was not delivered to the plaintiff, and if there was personal service on the defendant, the former might have declared in trover, and upon the proper state of facts might have obtained a judgment for the value of the property, and if the defendant was solvent, he might thus have obtained substantial justice in the end; but if through the neglect of the officer to replevy the property, a judgment against the defendant for its value was his only

resource, it was material to know how much that judgment would have been worth. Hence, we think the proof was competent, and that the court erred in rejecting it. It is urged, however, by the defendant in error, that the plaintiff had no property in the wheat, for the reason that the sale was made by himself through his agent, and that he could not become the purchaser at his own sale. The sale was not void, but only voidable, and the objection could not be made by the defendant, he having no interest in the property. Where one who is a trustee or mortgagee assumes to purchase at his own sale, the transaction may be avoided in equity, provided the mortgagor or *cestui que trust* within a reasonable time makes the proper application for that purpose, but until set aside it is valid, and so far as third parties are concerned they cannot make the objection. Kruse v. Steffens, 47 Ill. 112; Hamilton v. Lubekee, 51 Ill. 412; Bush v. Sherman, 80 Ill. 160.

But if this sale had been void, we have no doubt that the mortgagee would have had the right to take possession of the property. The mortgage was executed December 30, 1874, to secure a note due December 24, 1875, and had been properly acknowledged and recorded. It contained what is generally known as the "insecurity clause," and when the constable was about to levy an execution upon the wheat, this clause would have justified the plaintiff in taking possession though his note was not yet due; and if his subsequent proceedings were invalid, yet if he got possession he might retain it, and if the property was taken from him, might have regained it by a suit in replevin. The judgment will be reversed and the cause remanded.

Reversed and remanded.